**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

AGATA KRISTINA MAYOROS,

     Plaintiff,

v.

DESTINATION PET, LLC,

     Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Defendant Destination Pet, LLC, operates a national network of veterinary, boarding, and grooming facilities. It employed Plaintiff Agata Kristina Mayoros as Director of Operations of Field Strategy and Execution, paying her less than it paid male colleagues for performing substantially similar work. Its Chief Operating Officer, Jeff Halverson, verbally abused the women he supervised, including Ms. Mayoros. Four days after interviewing her as part of an investigation into whether COO Halverson was creating a hostile work environment, Defendant Destination Pet terminated Ms. Mayoros's employment.

Defendant Destination Pet is based in Highlands Ranch, Colorado, so its employment agreements include a provision applying Colorado law and requiring employees to bring disputes in Colorado. Colorado law prohibits the restrictive covenants and nondisclosure provisions unlawful in those agreements.

For her Complaint, Plaintiff Agata Kristina Mayoros alleges:

## PARTIES

1.      Plaintiff Agata Kristina Mayoros is an individual and resident of the State of Michigan with an address of 2718 Edsel Street, Trenton MI 48183.

2.      Defendant Destination Pet, LLC, is a Delaware corporation with a principal office address of 8822 S. Ridgeline Blvd., #260, Highlands Ranch, CO 80129.

## JURISDICTION

3.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and the amount in controversy (exclusive of interest and costs) exceeds $75,000.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado of the United States of America. Venue is also proper in this Court because of a forum selection clause between the parties designating the "state and federal courts located in Denver, Colorado" as an appropriate forum.

## ADMINISTRATIVE PREREQUISITES

5.      Ms. Mayoros filed charges of discrimination against Defendant and filed her Colorado Anti-Discrimination Act claims within 90 days of receiving her Notice of Right to Sue.

## FACTUAL ALLEGATIONS

6.      Defendant Destination Pet, LLC, headquartered in Highlands Ranch, Colorado, is a national network of pet-obsessed professionals dedicated to elevating the love and lives of our pet families through Connected Care. With more than a century of

experience, its founders understood the need for better pet healthcare and believed in

the value of integrating pet services from veterinary medicine to, grooming, boarding,

daycare, training and more. By connecting the experts behind the scenes, Defendant

Destination Pet gets to know its pet families in a way that allows it to offer proactive,

convenient, and personalized advice and care.



7.      Defendant Destination Pet hired Plaintiff Kristina Mayoros in July 2023 as

a Regional Floating Manager.

8.      Defendant Destination Pet required Ms. Mayoros to agree to an Employee

Confidentiality Agreement as a condition of her employment. The agreement provides:

> In consideration of new or continued employment with Destination Pet, LLC, a Delaware limited liability company (the "**Company**"), and for other consideration, the receipt and sufficiency of which are hereby acknowledged, I agree to the following:
>
> 1.   CONFIDENTIAL INFORMATION.
>
>   (a)  **Company Information**. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the exclusive benefit of the Company, or to disclose to any person, firm or entity without written authorization of an authorized officer of the Company (other than myself), any Confidential Information of the Company. I understand that "**Confidential Information**" means any non-public information that relates to the actual or anticipated business or research and development of the Company, Company proprietary information, technical data, trade secrets or know-how, including but not limited to research plans, research results, processes, methods, compositions, business plans, marketing plans, pricing plans, products and packages, services, suppliers, customer lists and customers (including but not limited to customers of the Company on whom I call or with whom I become acquainted during the term of my service on behalf of the Company), markets, software, specifications, inventions, operations, processes, techniques, procedures, compilations of data, technology, personnel data designs, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation. I further understand that Confidential Information does not include any of the foregoing items that has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the items involved.

9.    Defendant Destination Pet also required Ms. Mayoros to agree to an At-Will Employment, Noncompetition, Confidential Information and Assignment of Inventions Agreement as a condition of her employment.

10.    The agreement includes a confidentiality provision, which provides in part:

> 2.    **Confidential Information**.
>
> (a) *Company Information*. I agree at all times during the term of my employment with the Company and thereafter, to hold in strictest confidence, and not to use, except for the exclusive benefit of the Company, or to disclose to any individual or entity (each, a "**Person**"), in writing, orally, electronically, digitally, via the world wide web, via social media, via the Internet or in any other form or manner, without written authorization of an authorized officer of the Company (other than myself), any Confidential Information. I understand that "**Confidential Information**" means any non-public information that relates to the actual or anticipated business or research and development of the Company or any of its officers, directors, partners, managers, members, investors, stockholders, administrators, representatives, affiliates, divisions, subsidiaries, predecessors, successors or assigns (each, a "**Company Party**"), including, without limitation, financial information, business information, proprietary information, technical data, trade secrets or know-how, business plans, marketing plans, product plans, products, services, suppliers, customer lists and customers (including, but not limited to, customers of the Company on whom I call or with whom I become acquainted during the term of my service on behalf of the Company), markets, software, specifications, inventions, operations, procedures, compilations of data, technology or designs disclosed to me by any of the Company Parties or of which I become aware, either directly or indirectly, in writing, orally, electronically, digitally, via the world wide web, via social media, via the Internet or in any other form or manner or by observation. I further understand that Confidential Information does not include any of the foregoing items that has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

11.    The agreement also includes a non-solicitation provision. It provides:

> 7.    **Solicitation of Employees, Vendors, and Customers**. I agree that during my employment with the Company and for a period of twelve (12) months immediately following the termination of my employment ("*Restricted Period*") with the Company for any reason, I shall not either directly or indirectly solicit, induce, recruit or encourage (i) any of the Company's current or known prospective employees, vendors, or suppliers to leave their employment, or otherwise terminate or limit their business relationship with the Company; and (ii) any Customer to (x) cease or diminish their business relationship with the Company or otherwise interfere with the contracts and relationships of the Company with such persons, or (y) for the benefit of a Competitive Business (as defined below). "*Customer*" means and includes any person or entity (as well as its or their parent corporation, subsidiary, affiliate, partner, or joint venture) who, during the twelve (12) month period preceding the termination of my relationship with the Company, was (i) a customer or client of the Company, or was engaged in any discussions or negotiations to buy any goods or services from the Company, and (ii) I had contact with such person or entity or I had access to Confidential Information about such person or entity.

4

12.    The agreement also includes a non-competition provision. It provides:

> 8.    **Noncompetition.**
>
> (a) *Covenant.* I agree that during the Restricted Period, I will not, without the prior written consent of the Company, (i) serve as a partner, employee, consultant, officer, director, manager, agent, associate, or representative of, or otherwise be affiliated with or provide advice or counsel to, any Competitive Business (as defined below) in the Territory (as defined below), or (ii) directly or indirectly purchase, own, or control any equity or debt interest in, or organize, finance, or take preparatory steps for the organization or financing of, any Competitive Business in the Territory. This covenant shall not prohibit me from owning less than two percent of the securities of any company that is publicly traded on a national securities exchange or over-the-counter stock market. The foregoing covenant shall cover my activities in every part of the Territory in which I may conduct business during the term of such covenant as set forth above. I understand that for purposes hereof, (i) "*Territory*" shall mean (A) a five (5) mile radius around any Company facility in which I routinely worked during the term of my employment, and (ii) "*Competitive Business*" shall mean any business, (A) engaged in companion animal daycare, boarding, training, grooming, retail or providing veterinary medical services, or (B) competing in any other line of business that I knew or had reason to know the Company had formed an intention to enter within the twelve months after the termination of my employment.

13.    The agreement includes a choice of law and forum provision. It provides:

> (a) *Governing Law; Consent to Personal Jurisdiction.* This Agreement will be governed by the laws of the State of Colorado without regard for conflicts of laws principles. I hereby expressly consent to the exclusive personal jurisdiction of the state and federal courts located in Denver, Colorado for any lawsuit filed there against me by the Company arising from or relating to this Agreement, except that I recognize the Company reserves the right to seek preliminary or injunctive relief (such as a temporary restraining order or preliminary injunction) in any jurisdiction in which I live or work at the time of a breach or threatened breach of this Agreement. I agree that any dispute arising under or related to this Agreement will be adjudicated by trial to a court sitting without a jury. The attorneys' fees and costs of the substantially prevailing party in connection with the litigation will be assessed against the losing party.

14.    Defendant Destination Pet maintained an employee handbook during Ms. Mayoros's employment. Defendant Destination Pet's handbook explains:



**MISSION, VISION & VALUES**

Destination Pet's culture is founded on the values that foster our brand as a trusted service provider in our highly competitive industry.

**Mission**
It's our mission to elevate the love and lives of pet families.

**Vision**
It's our vision to be the leaders of Connected Care – a nationwide leader of trusted pet professionals committed to enriching pets' lives.

**Values**
Our Values are rooted in being on pack.  We work together:

- **Pet Obsessed** – We love your pets like our own.  We are passionate, whole-hearted, compassionate, and connected.

- **Trustworthy Partners** – We do the right thing, we mean what we say, and we do what we promise. We value integrity, honesty, transparency, and accountability.

- **Creative Innovators** – We move fast, and we take smart risks to enhance pet care – everyday.  We are strategic, fun, authentic and we try and learn.

15.    Defendant Destination Pet's handbook includes general standards of conduct, including one about confidential information:

**General Standards of Conduct**
The following behavior during employment with the Company, at any location or corporate headquarters, is expressly prohibited:

- Divulging trade secrets, proprietary or confidential information externally or internally without express authorization from the CEO or General Counsel.

6

16. Defendant Destination Pet's handbook includes an equal employment opportunity policy, which provides:

> **EQUAL EMPLOYMENT OPPORTUNITY POLICY**
>
> It is Destination Pet's policy to provide equal opportunity opportunities in all aspects of the employer-employee relationship including recruitment, hiring, placement, promotion, transfer, training, compensation, benefits, employee activities, access to facilities and programs, and general treatment during employment. All conditions and privileges of employment are administered to all employees and qualified applicants without regard to race, color, creed, religion, pregnancy status, national origin, ancestry, age, disability, sex, gender, gender identity or expression, sexual orientation, marital status, military or veteran status, genetic information of an individual or a member of such individual's family, personal or family medical history, domestic violence victim status, or any other category protected by federal, state and/or local laws. This policy applies to all aspects of the employment relationship, including but not limited to recruitment, hiring, compensation, training, promotion, transfer, disciplinary action, layoff, or return from layoff. Destination Pet will comply fully with all applicable federal, state and/or local fair employment laws that may forbid discrimination or harassment based on other protected characteristics.

17. Defendant Destination Pet's handbook includes a retaliation policy, which provides:

> **Reporting Concerns**: Employees with questions or concerns about equal employment opportunities in the workplace are encouraged to bring these issues to the attention of the HR Department or the Chief Compliance Officer. We will not allow any form of retaliation against employees who raise issues of perceived discrimination. To ensure our workplace is free of artificial barriers, violation of this policy may result in disciplinary action, up to and including termination.

18. Defendant Destination Pet's handbook includes a harassment policy, which provides:

> **Sexual and Other Harassment**
>
> You are prohibited from engaging in sexual or other harassment relating to a person's race, color, creed, religion, sex or gender, pregnancy status, national origin, ancestry, age, disability, marital status, sexual orientation, gender identity or expression, military or veteran status, genetic information of an individual or a member of such individual's family, personal or family medical history, domestic violence victim status, or any other category protected by federal, state and/or local laws. Destination Pet is committed to providing all employees with a workplace free from sexual or other harassment in any form and will not tolerate sexual or other harassment in any form. Any incident of sexual or other harassment in violation of this policy by any Destination Pet employee will result in appropriate disciplinary action, up to and including immediate termination. These types of behaviors are prohibited in the workplace regardless of whether they impact or involve other Destination Pet employees at any level in the organization or third parties (such as customers, vendors, or consultants).
>
> **Harassment:** Harassment is generally defined, for the purposes of this Handbook, as unwelcome verbal, visual, or physical conduct that demeans or shows hostility or aversion towards an individual due to any of the above protected characteristics, and that (1) has the purpose or effect of creating an intimidating, hostile, or offensive working environment; (2) has the purpose or effect of unreasonably interfering with an individual's work performance; or (3) otherwise adversely affects an individual's employment opportunities. Harassment can be verbal (including slurs, jokes, insults, epithets, gestures, or teasing, any of which in English or another language), visual (including offensive posters, symbols, cartoons, drawings, computer displays, or e-mails) or physical conduct (including physically threatening another, blocking someone's way, etc.) that denigrates or shows hostility or aversion towards an individual because of any protected characteristic. Such conduct violates this Handbook, even if it is not unlawful.

19.    Defendant Destination Pet's handbook contains a sexual harassment pol-

icy, which provides:

**Sexual Harassment:** Sexual harassment can include all of the above actions as well as unwelcome conduct, such as unwelcome or unsolicited sexual advances, requests for sexual favors, conversations regarding sexual activities, and other verbal or physical conduct of a sexual nature. Because individuals' perceptions of sexual harassment may differ, it is not possible to provide a definition covering all cases.

Some examples of prohibitive behavior include, but are not limited to:
- Repeated sexual flirtations, advances or propositions,
- Leering, whistling, obscene gestures,
- Requests for sexual favors,
- Repeated verbal abuse of a sexual nature,
- Sexually related comments and joking,
- Graphic or degrading comments about an employee's appearance,
- Displaying sexually suggestive objects or pictures including cartoons,
- Sending or displaying vulgar electronic messaging (emails, texts, app communications, social media posts on Company pages)
- Physical assault,
- Any unwelcome physical contact or touching, such as patting, pinching, or repeated brushing against another's body, or
- Disparate treatment based on sex or gender.

Such conduct may constitute sexual harassment when it:
- Is made an explicit or implicit condition of employment.
- Is used as the basis for employment decisions.
- Unreasonably interferes with an individual's work performance; or
- Creates an intimidating, hostile, or offensive working environment.

Any retaliation against an individual who either has complained about sexual or other harassment or has cooperated with the investigation of a sexual or other harassment complaint is similarly unlawful and will not be tolerated.

Any employee who believes that they have been the subject of sexual or other harassment in violation of this policy by another employee or by any third party in the workplace should immediately report the incident to someone in a supervisory/management role or to the HR Department. An employee who is either unsure of the appropriate person to whom to raise an issue or perceived harassment or who has not received a satisfactory response within five business days after reporting any incident of perceived harassment should contact the Legal Department or our anonymous third-party reporting hotline Lighthouse www.lighthouse-services.com/destpet or call 833-203-6462 (must include company name - Destination Pet).

Every report of perceived sexual or other harassment will be promptly, thoroughly, and impartially investigated as Destination Pet considers appropriate, and corrective, action will be as determined by Destination Pet in its reasonable discretion. Employees are required to cooperate in all investigations conducted pursuant to this policy. The identity of individuals who report a perceived violation of this policy, as well as any information obtained during Destination Pet's investigation, will be kept confidential to the extent possible (though confidentiality cannot be guaranteed). In addition, Destination Pet will not allow any form of retaliation against individuals who report unwelcome conduct to management in good faith or who cooperate in the investigations of such reports in accordance with this policy.

This policy is not designed or intended to limit Destination Pet's authority to discipline or take corrective action for workplace conduct deemed unacceptable, regardless of whether it satisfies the definition of sexual or other harassment under the law.

20.    Defendant Destination Pet maintained a communication standards policy during Ms. Mayoros's employment. The communication standards policy provides in part:

4.    **Policy**.

4.1    **Application**. This Policy applies to all communications by Destination Pet and its employees to (a) Supervisory Bodies, (b) news media inquiries, (c) publications, and (d) communications using social media and other types of interactive electronic, digital or online services, such as Facebook, Twitter, Reddit, LinkedIn, message boards, blogs, wikis and other similar services, as well as posting on personal or others' blogs, in chat rooms, or on various websites ("**Social Media**").

4.2    **Supervisory Bodies**.

4.2.1    **Generally**. Government and law enforcement agencies and other regulatory or supervisory bodies or agencies, or similar authorities ("**Supervisory Bodies**") may make inquiries and requests of Destination Pet, including random or targeted visits or calls. The inquiries may be made directly by the Supervisory Body or by third parties acting on the behalf of the Supervisory Body.

4.2.2    **Confirmation of Inquiry by Supervisory Body**. To ensure that inquiries and requests for information that purport to be from a Supervisory Body are legitimate and that an appropriate and timely response is provided, all communication with Supervisory Bodies must be conducted by the Compliance Manager or Destination Pet's legal team, except in an emergency situation where life or property is potentially in danger. The legal team will check with the Supervisory Body to confirm that the inquiry was legitimate.

4.2.3    **Coordination with Compliance Manager and Legal team**. If a Destination Pet employee is contacted by a member of any Supervisory Body, the employee should notify the Compliance Manager or the legal team as soon as possible and, in any event, prior to responding (except in an emergency situation where life or property is potentially in danger). If the contact is by telephone or in person, the employee should explain to the person that the employee is not authorized to provide any information to the person until Destination Pet has verified the inquirer's identity.

4.3.2    **Preservation of Confidentiality**. Destination Pet is required by law or contract to keep certain information confidential, and thus Destination Pet must take steps to avoid disclosing confidential information or violate any trading laws in any public statement, speech, media interview, appearance, or similar communication ("**Statements**"). All Statements to news media or in publications by Destination Pet employees must be cleared in advance by the Director of Strategy and Business Operations. If the Statement is approved, the Director of Strategy and Business Operations may restrict the topics on which the employee may comment, and the employee must follow any such instruction.

4.4.2    **Confidentiality**. Employees must maintain the confidentiality of (a) private information of Destination Pet employees, customers, and vendors, (b) Destination Pet's trade secrets (which may include information regarding the development of systems, processes, products, know-how and technology), (c) information that Destination Pet has identified as confidential, (d) information about a third party that Destination Pet has agreed to keep confidential, and (e) information required by law to be confidential. Employees should not post on Social Media (a) any information about or that may be used to identify Destination Pet employees, customers or vendors, (b) internal Destination Pet reports, policies, procedures, or (c) other internal business-related confidential communications. The law prohibits communicating or giving a "tip" on inside information to others so that others may buy or sell stocks or securities, even if the information is about other companies.

9

21.     Defendant Destination Pet maintained a whistleblower policy during Ms. Mayoros's employment. The whistleblower policy provides in part:

> 4.     **Policy**. This Policy applies to disclosure of information related to suspected wrongdoing or dangers at work (sometimes called "whistleblowing"). Destination Pet recognizes all organizations may unknowingly harbor illegal or unethical conduct and is committed to maintaining a culture of openness and accountability to prevent and address such situations. Destination Pet expects all employees to maintain high ethical standards and to follow this Policy any time an employee becomes aware of suspected wrongdoing at work.

22.     In September 2023, Defendant Destination Pet promoted Ms. Mayoros to interim Area Vice President, changing the terms and conditions of her employment.

23.     In December 2023, Defendant Destination Pet promoted Ms. Mayoros to Director of Operations Field Strategy and Execution, changing the terms and conditions of her employment.

24.     In the position of Director of Operations Field Strategy and Execution, Ms. Mayoros performed substantially similar work as male colleagues at the same level as her, like other Directors, and at lower levels than her, like managers. It paid at least two of these male employees, A.K. and D.R., more than it paid Ms. Mayoros for performing that substantially similar work.

25.     In the Director of Operations Field Strategy and Execution position, Defendant Destination Pet made Ms. Mayoros generally responsible for serving as a liaison between her second-level supervisor, Chief Operating Officer, Jeffrey Halverson, and field employees who worked at Defendant Destination Pet's facilities across the country.

26.     When Ms. Mayoros proposed ideas or asked COO Halverson to clarify directions and processes, he often responded with disparaging comments, that Ms. Mayoros was being "difficult," "dramatic," "emotional," "too much," "overwhelming,"

"chaotic," and "crazy." Ms. Mayoros observed COO Halverson degrade and dismiss other women. In contrast, COO Halverson praised Ms. Mayoros's male colleagues for being assertive in similar circumstances.

27.    COO Halverson excluded Ms. Mayoros from meetings

28.    On February 2, 2024, Defendant Destination Pet assigned Sara Kunce, Chief of Staff, to be Ms. Mayoros's supervisor.

29.    On April 3, 2024, Defendant Destination Pet gave Ms. Mayoros a performance review. On a scale of 1-5, Defendant Destination Pet rated two areas at 5, four at 4, and one at 3. The performance review included this feedback:

> Kristina does an outstanding job of responding and providing support. She can manage multiple projects and initiatives at once while delivering on time or before the deadline.

> Kristina is extremely knowledgeable of the business and how to pull levers operationally to drive revenue and process improvement for the field organization.

> Kristina's quality of work exceeds expectations. Kristina's work requires she collaborate with partners in the organization often, so not only does Kristina deliver quality individual contributor work but she also works well in creation of content with support partners.

> Kristina is very creative and is typically the first person to propose an alternative solution to barriers or to suggest a revamp of a process by providing input of her knowledge of the business.

30.    In April 2024, Ms. Mayoros had a phone call with Chief Kunce. During the call, Chief Kunce complained to Ms. Mayoros that one of Chief Kunce's subordinates had a higher salary than her. Both agreed that was not fair. Ms. Mayoros brought up COO Halverson's treatment of her, telling Chief Kunce that if Ms. Mayoros was a man, he would never talk to her like that. Ms. Mayoros told Chief Kunce that she felt like COO Halverson was treating her like a "hysterical woman."

31.    In May of 2024, Ms. Mayoros let Chief Kunce know she needed to take the day off. Chief Kunce called Ms. Mayoros to ask her what was wrong. Ms. Mayoros

11

explained that COO Halverson had been mentally and emotionally abusing Ms. Mayoros, creating a hostile work environment, and telling coworkers not to listen to her.

32.     Chief Kunce relayed that other employees contacted her with similar concerns and that she felt it necessary to elevate the concerns to the Chief Human Resources Officer, Robin Erwin.

33.     On about May 24, 2024, Chief Executive Officer and Chief Financial Officer, Jennifer Strickland and Leviathan Winn, held a Teams meeting with dozens of field team members, ten human resources employees, and Ms. Mayoros. During the meeting, CEO Strickland said that employees could contact her with any concerns.

34.     After the meeting, Ms. Mayoros contacted Defendant Destination Pet CEO Strickland to set up a meeting. Ms. Mayoros worked with CEO Strickland's assistant to schedule a meeting, but it never happened.

35.     In June 2024, Chief Kunce told Ms. Mayoros and other employees that Defendant Destination Pet started a formal investigation into COO Halverson's conduct toward employees.

36.     On June 14, 2024, Defendant Destination Pet Vice President of Human Resources, Melanie Braden, contacted Ms. Mayoros. Vice President Braden informed Ms. Mayoros she received several complaints about COO Halverson and asked for Ms. Mayoros's perspective. Ms. Mayoros relayed her concerns about COO Halverson's treatment of employees, including excluding employees and hiring younger women so he could manipulate them. She also told Vice President Braden that she worried about retaliation for complaining.

12

37. Four days later, on June 18, 2024, Defendant Destination Pet terminated Ms. Mayoros's employment. During the termination meeting, Vice President Braden told Ms. Mayoros that her termination was connected to the concerns she brought forward through the human resources investigation.

## FIRST CLAIM FOR RELIEF
### Discrimination In Violation of Colorado Anti-Discrimination Act

38. Plaintiff Mayoros incorporates all allegations in this pleading into this claim for relief.

39. Defendant Destination Pet excluded Plaintiff Mayoros from meetings, harassed Plaintiff Mayoros, and terminated Plaintiff Mayoros's employment because of her sex.

40. The harassing conduct was unwelcome, offensive, and directed at Plaintiff Mayoros because of her sex.

41. The harassing conduct was made a term of Plaintiff Mayoros's employment and had the purpose or effect of unreasonably interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment.

42. Defendant Destination Pet knew or should have known about the harassment but failed to implement reasonably prompt and appropriate corrective action.

43. Defendant Destination Pet's conduct caused Plaintiff Mayoros damages.

## SECOND CLAIM FOR RELIEF
### Retaliation In Violation of Colorado Anti-Discrimination Act

44. Plaintiff Mayoros incorporates all allegations in this pleading into this claim for relief.

13

45.     Plaintiff Mayoros opposed practices that the Colorado Anti-Discrimination Act makes discriminatory or unlawful employment practices, including complaining about a hostile work environment.

46.     Because of Plaintiff Mayoros's opposition to practices that the Colorado Anti-Discrimination Act makes discriminatory or unlawful employment practices, Defendant Destination Pet retaliated against her by terminating her employment.

47.     Defendant Destination Pet's conduct caused Plaintiff Mayoros damages.

### THIRD CLAIM FOR RELIEF
### Unequal Wages in Violation of Colorado Equal Pay for Equal Work Act

48.     Plaintiff Mayoros incorporates all allegations in this pleading into this claim for relief.

49.     Defendant Destination Pet paid Plaintiff Mayoros, a woman, a wage rate less than the wage rate it paid to male employees, including A.K. and D.R., for substantially similar work as Directors and managers.

50.     Defendant Destination Pet's conduct caused Plaintiff Mayoros damages.

### THIRD CLAIM FOR RELIEF
### Unpaid Wages in Violation of Colorado Wage Act

51.     Plaintiff Mayoros incorporates all allegations in this pleading into this claim for relief.

52.     The Colorado Wage Act defines "wages" as all "amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, . . . or whether the labor or service is performed under contract, …. No amount is considered to be wages or compensation until such amount is earned, vested, and

14

determinable, at which time such amount shall be payable to the employee[.]" C.R.S. § 8-4-101(14)(a)(I).

53.    Plaintiff Mayoros performed work to earn wages equal to male colleagues.

54.    The wages vested as Plaintiff Mayoros earned them, or at the latest, upon her termination.

55.    The wages are determinable by math.

56.    Defendant Destination Pet failed to pay Plaintiff Mayoros the earned wages that were owed to her at the time of her termination.

57.    Defendant Destination Pet's failure to pay Plaintiff Mayoros is willful under C.R.S. § 8-4-109(3)(b)(II).

58.    Defendant Destination Pet's conduct caused Plaintiff Mayoros damages.

## CLASS ACTION ALLEGATIONS AND CLAIMS

59.    Defendant Destination Pet does business as a number of veterinary, dog daycare, and grooming facilities, including at least eight in Colorado. Employees of these facilities are employees of Defendant Destination Pet.

60.    Defendant Destination Pet's handbook, including its standard of conduct about confidential information, applies to all its employees.

61.    Defendant Destination Pet's communication standards policy applies to all its employees.

62.    Defendant Destination Pet relied on a form or template Employee Confidentiality Agreement to create the one it required Ms. Mayoros to sign.

15

63.     On information and belief, Defendant Destination Pet uses the same form or template Employee Confidentiality Agreement to create the confidentiality agreement for all its employees.

64.     Defendant Destination Pet relied on a form or template At-Will Employment, Noncompetition, Confidential Information and Assignment of Inventions Agreement to create the one it required Ms. Mayoros to sign.

65.     On information and belief, Defendant Destination Pet uses the same form or template At-Will Employment, Noncompetition, Confidential Information and Assignment of Inventions Agreement to create the confidentiality agreement for all its employees.

66.     This is a Fed.R.Civ.P. 23 class action on behalf of Plaintiff and classes for which Plaintiff seeks certification. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the classes as follows:

**ALL CURRENT AND FORMER DESTINATION PET, LLC, EMPLOYEES WHO WORKED FOR DESTINATION PET, LLC, ON AND AFTER AUGUST 7, 2023, IN COLORADO OR SIGNED AN EMPLOYMENT AGREEMENT WITH A COLORADO CHOICE OF LAW PROVISION. (The "POWR Class").**

**ALL CURRENT AND FORMER DESTINATION PET, LLC, EMPLOYEES WHO WORKED FOR DESTINATION PET, LLC, ON AND AFTER AUGUST 10, 2022, AND SIGNED AN AT-WILL EMPLOYMENT, NONCOMPETITION, CONFIDENTIAL INFORMATION AND ASSIGNMENT OF INVENTIONS AGREEMENT. (The "Noncompete Class").**

67.     This action is properly brought as a class action because:

a. The Classes are so numerous that joinder of all Class Members is impracticable.

16

b.   Numerous questions of law and fact regarding the liability of Defendant are common to the Classes and predominate over any individual issues which may exist.

c.   Although the exact amount of damages may vary among Class Members, the damages for the Class Members can be easily calculated by a simple formula. The claims of all Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all Class Members.

d.   The claims asserted by Plaintiffs are typical of the claims of Class Members and the Classes are readily ascertainable from Defendant's records. Plaintiff was subject to the same agreement as all other workers that form the basis of the alleged violation. Defendant applied its policies to Plaintiff just as it did with all Class Members.

e.   Plaintiffs will fairly and adequately protect the interests of Class Members. The interests of Class Members are coincident with, and not antagonistic to, those of Plaintiff. Plaintiff is committed to this action and have no conflict with the class members. Furthermore, Plaintiff is represented by experienced class action counsel.

f.   Questions of fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIFTH CLAIM FOR RELIEF**
**Violation of Protecting Opportunities and Workers' Rights Act**
**on Behalf of POWR Class**

68.     Plaintiff Mayoros incorporates all allegations in this pleading into this claim for relief.

69.     Defendant Destination Pet is an employer under C.R.S. § 24-34-401(3).

70.     Plaintiff Mayoros and the POWR Class Members were or are employees of Defendant Destination Pet under C.R.S. § 24-34-401(2).

71.     Defendant Destination Pet presented, entered into, and renewed employment agreements with Plaintiff Mayoros and the POWR Class Members that included nondisclosure provisions that limit the ability of Plaintiff Mayoros and the POWR Class Members to disclose or discuss any alleged discriminatory or unfair employment practice.

72.     The nondisclosure provisions do not apply equally to all parties.

73.     The nondisclosure provisions do not expressly state that they do not restrain the employee or prospective employee from disclosing the underlying facts of any alleged discriminatory or unfair employment practice.

74.     The nondisclosure provisions do not expressly state that disclosure of the underlying facts of any alleged discriminatory or unfair employment practice does not constitute disparagement.

75.     The agreements do not include an addendum, signed by all parties, attesting to compliance with C.R.S. § 24-34-407(1).

76.    Defendant Destination Pet conduct caused Plaintiff Mayoros and the POWR Class Members damages.

## SIXTH CLAIM FOR RELIEF
### Declaratory Judgment on Behalf of POWR Class

77.    Plaintiff Mayoros incorporates all allegations in this pleading into this claim for relief.

78.    Plaintiff Mayoros and the POWR Class Members are interested persons under a written contract.

79.    Plaintiff Mayoros and the POWR Class Members and the written contract are affected by statute, C.R.S. § 24-34-407.

80.    Plaintiff Mayoros and the POWR Class Members seek a declaration that the nondisclosure provisions are void.

## SEVENTH CLAIM FOR RELIEF
### Violation of the Colorado Non-Compete Statute on Behalf of Noncompete Class

81.    Plaintiff Mayoros incorporates all allegations in this pleading into this claim for relief.

82.    Defendant Destination Pet is an employer under C.R.S. § 8-2-113.

83.    Plaintiff Mayoros and the Noncompete Class Members were workers or prospective workers of each Defendant under C.R.S. § 8-2-113.

84.    Defendant Destination Pet presented, entered into, and renewed agreements with Plaintiff Mayoros and the Noncompete Class Members that included covenants restricting the right of Plaintiff Mayoros and the Noncompete Class Members to

19

receive compensation for performance of labor and are void under C.R.S. § 8-2-113(2)(a).

85.    Defendant Destination Pet did not provide notice of the restrictive covenants as required under C.R.S. § 8-2-113(4).

86.    Defendant Destination Pet's conduct caused Plaintiff Mayoros and the Noncompete Class Members damages.

## EIGHTH CLAIM FOR RELIEF
### Declaratory Judgment on Behalf of Noncompete Class

87.    Plaintiff Mayoros incorporates all allegations in this pleading into this claim for relief.

88.    Plaintiff Mayoros and the Noncompete Class Members are interested persons under a written contract.

89.    Plaintiff Mayoros and the Noncompete Class Members and the written contract are affected by statute, C.R.S. § 8-2-113.

90.    Plaintiff Mayoros and the Noncompete Class Members seek a declaration that the nondisclosure provisions are void.

## REQUESTED RELIEF

Plaintiff Mayoros asks the Court to grant the following relief:

    a.  Economic damages;

    b.  Non-economic damages, including compensatory damages;

    c.  Liquidated damages under C.R.S. § 8-5-104(2)(a);

    d.  Penalties under C.R.S. § 8-4-109(3)(b)(II);

    e.  Punitive damages under C.R.S. § 24-34-405(3)(a);

20

   f.   Attorney's fees under C.R.S. § 24-34-405(5), C.R.S. § 8-5-104(2)(b), and C.R.S. § 8-4-110(b)(II);

   g.   All costs incurred in bringing these claims; and

   h.   Pre-judgment and post-judgment interest.

On behalf of herself and the classes, Plaintiff Mayoros asks the Court to grant the following relief:

   a.   Determining that the action is properly maintained as a class action, certifying Plaintiff as the class representative, and appointing Plaintiff's counsel as counsel for Class Members;

   b.   Awarding Plaintiff and the Class Members their actual damages, including economic losses and compensatory damages, as allowed by C.R.S. § 24-34-407(2)(b) and C.R.S. § 8-2-113(8)(b);

   c.   Awarding Plaintiff and the Class Members penalties as allowed by C.R.S. § 24-34-407(2)(a) and C.R.S. § 8-2-113(8)(b);

   d.   Awarding Plaintiff and the Class Members pre-judgment and post-judgment interest, costs, and attorney's fees; and

   e.   Any other legal or equitable relief the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Respectfully submitted September 2, 2025.

**LOWREY PARADY LEBSACK, LLC**

*s/J. Bennett Lebsack*
J. Bennett Lebsack, No. 45206
Verónica González, No. 60195
Lowrey Parady Lebsack, LLC
1490 Lafayette Street, Suite 304
Denver, CO 80218
Phone: (303) 593-2595
ben@lowrey-parady.com
veronica@lowrey-parady.com